UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAYOR SAESEE,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:11-cv-01428 - JLT<br><br>ORDER REMANDING THE MATTER PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF NAYOR SAESEE AND AGAINST DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY |

        Nayor Saesee ("Plaintiff") asserts she is entitled to Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") improperly rejected her subjective complaints and erred in evaluating the medical evidence. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the matter is **REMANDED** for further proceedings.

**PROCEDURAL HISTORY**

        Plaintiff filed an application for SSI benefits on August 1, 2007, alleging disability beginning March 5, 2004. (Doc. 12-6 at 2). The Social Security Administration denied her claim initially on December 24, 2007, and upon reconsideration on April 29, 2008. (Doc. 12-4 at 2-18). Plaintiff testified at a hearing before an ALJ on September 10, 2009. (Doc. 12-3 at 26-55). The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying

benefits on November 13, 2009. *Id.* at 13-24. Plaintiff requested a review by the Appeals Council of Social Security, which found no reason to change the ALJ's decision on June 24, 2011. *Id.* at 2-5. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of

disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

**A.   Relevant Medical Evidence**

According to Dr. Martin Rindahl, Plaintiff had "a long history of back pain and severe scoliosis." (Doc. 12-8 at 3) On April 25, 2007, Plaintiff reported her pain was chronic, but over the past two weeks it had become "increasingly severe," and radiated "to her low back and thighs and even to her hips." *Id.* Plaintiff informed Dr. Rindahl that she had been taking hydrocone and cyclobenzaprine, but "the effectiveness of this medication . . . markedly decreased over the last several months." *Id.* Plaintiff stated she had a difficulty with ambulation, and missed work due to her back pain. *Id.*

Dr. Rindahl ordered an MRI, which demonstrated scoliotic curvature of Plaintiff's spine, as well as "[s]pinal dysraphic changes of the lumbosacral spine, with a right sided hemivertebra noted at the L3-4 vertebral body level, and partial fusion of the L1 and L2 vertebrae." (Doc. 12-8 at 6-7). The MRI revealed "multilevel degenerative change of the thoracolumbar spine with disc space narrowing [and] disc desiccation," but "[n]o significant spinal canal narrowing." *Id.* at 7.

Plaintiff participated in two physical therapy sessions for her back pain, between April and May 2007, at the Kaweah Delta Health Care District. (Doc. 12-8 at 41). Because Plaintiff had "cancelled and no showed on a number of occasions . . . and did not attempt to reschedule her appointments," she was discharged from physical therapy on May 22, 2007. *Id.*

On June 22, 2007, Plaintiff began mental health treatment with Tulare County Health & Human Services Agency. (Doc. 12-8 at 8). Blake Kerr, a social worker at the agency, completed an "Initial Strengths / Needs Assessment" form on July 6, 2007. *Id.* at 8-12. At the initial consultation, Plaintiff reported she needed assistance "with her chronic back pain and depression." *Id.* at 8. In addition, Mr. Kerr noted:

> She reports that her back is in constant pain. She has had to miss work and was layed [sic] off. She states that she isolates herself and doesn't like going out anymore. She has had a loss of appetite. She often is sad nearly everyday for the past 4 months. She was seeing a psychologist at FHCN and was put on medication for depression and anxiety. She states that she gets scared being in a car or in a small room. She reports an accelerated heart rate when she is scared. She reports that she often stays in her room for most of the day. She reports difficulty in getting to sleep and staying asleep. Her ex bf who used to abuse her visits his children and this causes her stress. She often feels worthless because she has let her parents down by having children out of wedlock. She feels she has 'shamed' the family.

*Id.* Further, Plaintiff asserted she was unable "to go to school or work due to the depression." *Id.* at 9. Based upon Plaintiff's reports, Mr. Kerr diagnosed Plaintiff with a major depressive disorder and depression due to a medical condition. *Id.* at 11. Mr. Kerr gave Plaintiff a GAF score of 50.[1] *Id.*

Plaintiff participated in some therapy sessions with Mr. Kerr at Tulare County Health, but missed several appointments between September and November 2007. (Doc. 12-8 at 18-25). Therefore, on November 8, 2007, Mr. Kerr opined Plaintiff was "unresponsive[] to participating in services." *Id.* at 21.

Dr. Rosalinda Serrano performed a consultative comprehensive orthopedic evaluation on October 14, 2007. (Doc. 12-8 at 30-35). Plaintiff reported the intensity of her back pain was a "9-10/10 in the pain scale." *Id.* In addition, Plaintiff informed Dr. Serrano that she did not feel any change in her symptoms after receiving epidural injections. *Id.* at 31. According to Plaintiff, she was able to do the dishes, but was "unable to perform activities of daily living because of her back pain."

---

[1] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

*Id.* Dr. Serrano Plaintiff's range of motion was "[r]estricted due to back pain." *Id.* at 33. Plaintiff demonstrated "diffuse tenderness of the cervical, thoracic, and lumbar spine," as well as "pain and tenderness at T2-T12 and L2-S1." *Id.* Plaintiff's strength in her right leg was 4/5, 5/5 in her left leg, and 5/5 in both arms. *Id.* at 33. Dr. Serrano offered the following functional assessment:

> Because of involvement of the cervical, thoracic, and lumbar spine, as well as scoliosis, the number of hours the claimant could be expected to stand and walk would be two hours.
>
> The number of hours the claimant could be expected to sit would be less than six hours.
>
> The claimant does not need any assistive device. Her gain is safe, although she walks with one hip higher than the other and is slightly limping. She should avoid ambulation on uneven surfaces.
>
> The amount of weight the claimant could lift and carry both frequently and occasionally, taking into consideration her short stature, scoliosis, and chronic back pain, should be less than 10 pounds frequently and occasionally to prevent further exacerbation of back pain.
>
> There are postural limitations on bending, stooping, crouching, crawling, and kneeling. She should do these occasionally, or avoid them if at all necessary.
>
> There are manipulative limitations on reaching bilaterally because she has limitation on range of motion of the lumbosacral spine.
>
> There are no limitations on handling, feeling, or grasping bilaterally.
>
> There are no relevant visual or communicative limitations. Because of the scoliosis and the way she walks with an abnormal gait pattern and back pain, she should not walk up and down stairs or ladders.

(Doc. 12-8 at 34).

On October 28, 2007, Dr. Soad Khalifa performed a comprehensive psychiatric evaluation. (Doc. 12-8 at 36). Plaintiff "presented with somatic complaints and mild depressive symptoms and mild anxiety symptoms." *Id.* However, Plaintiff "did not seem to be significantly depressed and did not seem to be anxious." *Id.* at 37. Based upon Plaintiff's description of her impairments, Dr. Khalifa opined Plaintiff "seemed to be exaggerating." *Id.* at 36. Likewise, Dr. Khalifa observed Plaintiff was not cooperative on the memory test because "she was not trying hard to remember some things." *Id.* at 37. Nevertheless, Dr. Khalifa found Plaintiff's memory was intact, because "[s]he remembered 3/3 objects immediately, and 2/3 in a few minutes." *Id.* According to Dr. Khalifa, Plaintiff's concentration was intact, and her persistence and pace were good. *Id.* at 38. Therefore, Dr. Khalifa

assigned Plaintiff a GAF score of 60.[2]  *Id.*  Dr. Khalifa opined Plaintiff "should be able to understand, carry out and remember simple instructions."  *Id.*

Dr. Ernest Wong completed a physical residual functional capacity assessment on December 4, 2007.  (Doc. 12-8 at 84).  Although Plaintiff walked with an antalgic gait, Dr. Wong observed she did not require the use of an assistive device.  *Id.* at 85.  Therefore, Dr. Wong opined Plaintiff was able to stand and walk for about six hours, as well as sit for about six hours, in an eight-hour workday.  *Id.*  In addition, she could frequently lift and carry ten pounds, and occasionally lift and carry twenty pounds.  *Id.*  Based upon Plaintiff's straight leg raising test results, Dr. Wong opined Plaintiff could occasionally stoop; climb ladders, ropes, and scaffolds; and crouch.  *Id.* at 87.  She could frequently balance, kneel, crawl, and climb rams/ stairs.  *Id.*  Plaintiff did not have any manipulative or visual limitations.  *Id.*  According to Dr. Wong, the assessment of Dr. Serrano was "not supported" because Plaintiff had "no acute distress or mention of difficulty sitting" at the consultative examination, Plaintiff had normal range of motion and strength, as well as normal sensory test results.  *Id.* at 89.  Further, Dr. Wong noted the "observations of no difficulty sitting/ standing/ walking/ hand use/ writing."  *Id.*

On December 12, 2007, Dr. Robert Hood completed a psychiatric review technique, and noted that "the medical evidence of mental impairment is sparse."  (Doc. 12-8 at 92-103).  Dr. Hood opined Plaintiff had no restrictions in her activities of daily living, and no difficult in maintaining social functioning, concentration, persistence, or pace.  *Id.* at 101.  Dr. Hood concluded, "There is little evidence of a severe mental impairment."  *Id.* at 92.

Dr. Allen Middleton reviewed Plaintiff's medical records and affirmed the findings of Dr. Hood on April 16, 2008.  (Doc. 12-9 at 56).  Similarly, Dr. Clancy reviewed Plaintiff's medical records regarding her physical impairments, and noted Plaintiff's only medication for her pain was Vicodin, which "is considered to be on the conservative side from a pain management standpoint."  *Id.*  In addition, Dr. Clancy noted Plaintiff's activities of daily living "continue to be fairly active still

---

[2] A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id.* at 34.

which negates the severe restrictions recommended" by the consultative examiner. Consequently, Dr. Clancy affirmed the RFC recommended by Dr. Wong. *Id.*

**B.     Hearing Testimony**

Plaintiff testified before the ALJ on September 10, 2009. (Doc. 12-3 at 26). Plaintiff reported that she was married, and has three children. *Id.* at 31. According to Plaintiff, she completed high school and took some college courses. *Id.* at 33-34. Plaintiff said she last worked part-time, for approximately eight months, performing office work. *Id.* at 34. Plaintiff believed she was unable to perform any job eight hours a day, five days a week due to "severe back pain," depression, insomnia, and arthritis in her arms and legs. *Id.* at 35.

Plaintiff stated she had pain in her neck to lower back that was an "eight" on a scale of one to ten, with ten requiring her to go the emergency room. (Doc. 12-3 at 36). Plaintiff testified her pain increased if she did "heavy stuff," including lifting more than ten pounds. *Id.* In addition, Plaintiff said her pain was aggravated by climbing, reaching, bending, and "sitting . . . for a long period of time." *Id.* at 37-38. Plaintiff estimated that she was unable to sit for more than "10 to 20 minutes," and could stand for up to thirty minutes before taking a break. *Id.* at 37. According to Plaintiff, she was able to walk "a half a block" before she would have to stop. *Id.* Plaintiff said that she was unable to walk on uneven surfaces, such as grass or gravel, because it would hurt her left leg. *Id.* at 38. Although she believed she could walk up a flight of stairs, she explained it would take a while. *Id.*

She reported that she took Fentanyl and Vicodin every day to alleviate her back pain. (Doc. 12-3 at 40-41). Plaintiff said the medication helped, but did not completely take the pain away. *Id.* at 41. She testified she was no longer seeking treatments from her doctor "because he can't do nothing," and the injection treatments for pain did not help. *Id.* at 40. Plaintiff said she stopped physical therapy and missed doctor appointments due to a lack of transportation. *Id.* at 42.

In addition to her physical impairments, Plaintiff testified she suffered from depression that affected her ability to function. (Doc. 12-3 at 44). She reported that she was "constantly sad and stressing" about her inability to work due to pain. *Id.* Plaintiff stated she did not have any interests or hobbies and did not "like to really do anything because of [her] pain." *Id.* at 45. Plaintiff testified she took medication and received treatment each month for her depression. *Id.* Although Plaintiff

7

believed the medication helped, she said it did not take the depression away. *Id.* at 46. Further, Plaintiff believed she had difficulties with concentration and was only able to focus for "[f]ive to 10 minutes." *Id.* at 49.

According to Plaintiff, her back pain caused her to lie down "[a]t least two times during the day," for thirty minutes to an hour each time. (Doc. 12-3 at 41). She stated that she was able to bathe and dress herself. *Id.* at 43. Plaintiff said she would start to cook, but her husband would finish preparing the meal because she was unable to stand. *Id.* at 47. Also, Plaintiff reported she did not do the cleaning or grocery shopping, because her husband performed these tasks. *Id.* However, she did laundry approximately once a week. *Id.*

Vocational Expert ("VE") Tom Dachelet testified after Plaintiff. (Doc. 12-3 at 50). The VE characterized Plaintiff's past work as "light, SVP four."[3] *Id.* at 51. The ALJ asked the VE to consider a hypothetical individual the same age, education, and work experience as Plaintiff. *Id.* The individual was capable of light physical exertion; could "only occasionally stoop, crouch, and climb ladders, ropes, or scaffolds; and was able "to frequently balance, kneel, crawl, and climb ramps or stairs." *Id.* The VE opined that the individual would be able to perform Plaintiff's past relevant work. *Id.* Further, the VE explained that "the full world of sedentary and light unskilled" work would be available. *Id.*

Next, the ALJ asked the VE to consider an individual "who can lift and carry 10 pounds occasionally and frequently, can stand and walk a total of two hours and sit a total of less than six hours." (Doc. 12-3 at 51). Also, the individual could occasionally stoop, crouch, crawl, kneel, and reach. *Id.* The VE concluded there were no jobs for an individual with these impairments. *Id.* at 52.

///

///

---

[3] **Error! Main Document Only.**"SVP," or specific vocational preparation, is defined as the amount of lapsed time required by a typical worker to learn techniques, acquire information, and develop the facility needed for average performance in a specific job position. Employment and Training Admin., U.S. Dep't of Labor, *Dictionary of Occupational Titles*, (4th ed. rev. 1991), page 1009.
The *Dictionary of Occupational Titles* ("*DOT*") may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

8

///

## C.  The ALJ's Findings

Pursuant to the five-step process, the ALJ determined that Plaintiff was not under a disability within the meaning of the Social Security Act.  (Doc. 12-3 at 13).  The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the filing of her application for benefits.  *Id.* at 15.  The ALJ found Plaintiff's severe impairments included lumbar degenerative disc disease and scoliosis.  *Id.*  However, Plaintiff's mental impairment of adjustment disorder with depressed mood was not a severe impairment.  *Id.*  The ALJ found Plaintiff's severe impairments, did not meet or medically equal a listing.  *Id.* at 16.

After carefully considering the entire record, the ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours, and sit 6 hours, in an 8-hour workday; frequently balance, kneel, crawl, and climb ramps or stairs; and occasionally stoop, crouch, and climb ladders, ropes, and scaffolds."  (Doc. 12-3 at 16).  With this RFC, Plaintiff was capable of performing jobs that exist in significant numbers in the national economy.  *Id.* at 17.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  *Id.*

## **DISCUSSION AND ANALYSIS**

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons."  *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Here, the ALJ determined Plaintiff's "medically-determinable impairments can reasonably be expected to cause the alleged symptoms."  (Doc. 12-3 at 17).  However, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of [her] symptoms are not credible . . . " *Id.*  Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain.

Importantly, in 1984, Congress amended the statutes governing disability to address allegations of pain. *See Bunnell*, 947 F.2d at 347; 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Howard v. Heckler*, 782 F.2d 1484, 1488 n.4 (9th Cir. 1986). The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings.

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence. *Id.; see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony").

**A.   The ALJ's credibility determination is not supported by clear and convincing reasons.**

Factors that may be considered include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, the ALJ considered a number of factors, including Plaintiff's daily activities, observations of Plaintiff at the hearing, and her compliance with treatment. (Doc. 12-3 at 16-18). Plaintiff asserts these reasons were legally insufficient to support a rejection of her testimony regarding excess pain. (Doc. 15 at 21).

*Activities of daily living*

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec.*

*Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603). For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barchart,* 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances…"). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). However, an ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a plaintiff's allegations of disability. *Orn*, 495 F.3d at 639.

In this case, the ALJ considered Plaintiff's daily activities—which included chores such as preparing basic meals, making the bed, washing dishes, sweeping, and doing laundry—and concluded her activities were inconsistent with her complaints of completely disabling pain. (Doc. 12-3 at 17). However, the Ninth Circuit has made clear that the mere fact a claimant engages in normal daily activities "does not any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 290 F.3d 1044, 1050 (9th Cir. 2001). The Court continued, "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting Fair, 885 F.2d at 603). Rather, an ALJ must make a determination as to whether daily activities are transferrable to a workplace. *See Orn*, 495 F.3d at 639 (the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations").

The ALJ failed to find Plaintiff's limited activities could be transferred to a work setting, or state Plaintiff spent a "substantial" part of her day engaged in such activities. Moreover, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue,* 263 Fed. App'x 635, 637 (9th Cir. 2008). Consequently, Plaintiff's activities of daily living were not clear and convincing evidence to discount her credibility. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

///

*ALJ's personal observations*

When an ALJ includes personal observations of a claimant during the hearing, the decision is not improper if other evidence supports the determination. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony). In this case, the ALJ noted: "Ms. Saesee testified she can sit for only 15-20 minutes, but sat through the entire hearing, which lasted about 40 minutes. She also testified she can only concentrate for 5-10 minutes, but participated during the entire hearing without becoming apparently confused or unable to understand." (Doc. 12-3 at 17). However, the ALJ did not identify "other" evidence consistent with his personal observations, and did not address how her ability to participate in the hearing transferred to a work environment given her allegations of excess pain. Accordingly, the ALJ's personal observation is not a clear and convincing reason supporting the credibility determination.

*Compliance with treatment*

The ALJ noted Plaintiff stopped attending physical therapy[4] and "has a history of not showing up to doctor appointments." (Doc. 12-3 at 17). In addition, the ALJ noted Plaintiff "was noncompliant with her psychological medications and was untruthful about that fact on at least one occasion." *Id.* Notably, review of the medical records indicates Plaintiff was responsible for taking her medication, while her treating physician opined she may require assistance, which Dr. Tieu believed explained Plaintiff's failure to take the prescribed medication. (Doc. 12-10 at 80). Moreover, treatment notes from Tulare County Mental Health indicate Plaintiff was complying with treatment and taking the prescribed medications. *Id.* at 84-96.

The ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Therefore, the credibility determination cannot be upheld because the ALJ failed to set forth clear and convincing reasons supported by substantial evidence in the record.

---

[4] Plaintiff testified that she missed doctor appointments and stop attending physical therapy because of a lack of transportation. Though the Court questions why Plaintiff did not take public transportation, there is no evidence addressing whether public transportation was readily available to her. Thus, the Court does not have any information why the ALJ found this explanation to be insufficient.

**B.     Remand is appropriate in this matter.**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony could be credited as true, and remand is not appropriate. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Based upon the record, remand is appropriate in this matter.

## CONCLUSION AND ORDER

For all these reasons, the Court concludes the ALJ erred in assessing Plaintiff's credibility as related to her subjective complaints of excess pain. As a result, the administrative decision should not

be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  Therefore, the Court will order the matter remanded for the ALJ to determine whether Plaintiff's limitations preclude her from work in the national economy.  Because the Court finds remand is appropriate on this matter, it will not address the remaining issues raised by Plaintiff in her opening brief.

   Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Nayor Saesee and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

  Dated:   **September 11, 2012**         **/s/ Jennifer L. Thurston**
                           UNITED STATES MAGISTRATE JUDGE